**John P. STAFFORD, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 53S00–8809–CR–802.

Supreme Court of Indiana.

Feb. 9, 1990.

Robert W. Beck, Deputy Public Defender, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

Appellant was convicted of three counts of Confinement, Class B felonies, for which he received a sentence of twenty (20) years each. He was convicted of Attempted Battery, a Class C felony, for which he received a sentence of five (5) years and Battery, a Class B misdemeanor, for which he received a sentence of one hundred eighty (180) days, all sentences to be served concurrently.

The facts are: For the purpose of making a decision in this case, we will accept appellant's claim that on August 29, 1987 he gave Mickie Brown $100 to purchase drugs from Curtis Harding, that Brown kept the money and told appellant that Harding would not deliver the drugs. Harding testified that Brown in fact did contact him and attempt to buy drugs but that he told Brown he no longer dealt in drugs.

On the evening of August 29, 1987, Sharon Hanson, her son Bradley, and her daughter Julie were watching television in their home next door to the Harding home when they heard footsteps approaching their front door. Bradley went toward the door, but appellant entered before Bradley reached the door. He pushed Bradley back toward the couch and ordered him to sit down, brandished a knife, and stated, "Where is it?"

Appellant was unknown to the Hansons and they at first were unable to determine what it was he was demanding. When he stated he wanted money, they tried to convince him they did not have any. Appellant apparently became convinced he had entered the wrong house and apologized to the Hansons. However, he tore their telephone from the wall and left after telling them not to move for a few minutes. After a few minutes, the children left the house and called the police.

In the meantime, appellant went next door to Harding's house, kicked open the door, and entered. James Fike was visiting Harding at the time, and when appellant entered, he immediately pinned Fike to the couch, while holding a knife. Appellant then heard Thelma Meadows, who also lived in the home, and dragged her from the bathroom and threatened Harding and Meadows by holding the knife to Meadows' throat. He demanded money from Harding and Harding instructed Meadows to give appellant money from her purse, which she did.

Harding, knowing that Brown had approached him earlier in the day in an attempt to buy drugs, tried to convince appellant that if he had a problem it was Mickie Brown who was at fault. During the encounter with Meadows and Harding, Fike had left the residence and called police. However, before appellant left, Fike returned and informed appellant he had called police, whereupon appellant swung at Fike with the knife narrowly missing him. At that time, police arrived and appellant was arrested.

Appellant claims there is insufficient evidence to support his conviction. His theory is that he had reasonable cause to believe that Harding had taken $100 of his money but had refused to deliver drugs. Therefore, he had a right to use reasonable force to retrieve his money. He cites *Jackson v. State* (1983), Alaska App., 657 P.2d 405, 407, which states: "At common law, a merchant has the right to retrieve, by nondeadly force, a property illegally obtained from him by force or fraud." *See* Restatement (Second) of Torts § 100–111 (1965).

In the case at bar, Judge Baker in fact did give his Final Instruction No. 13, which reads as follows:

"A person is justified in using reasonable force if he reasonably believes that the force is necessary to immediately prevent or terminate the other person's criminal interference with his property.

However, a person is not justified in using deadly force in this instance. Deadly force is defined as that force that creates a substantial risk of serious bodily harm."

He also gave Final Instruction No. 14, which reads as follows:

"It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact if the mistake negates the culpability required for commission of the offense."

Appellant also quotes at length from 6 Am.Jur.2d, *Assault and Battery* §§ 86 and 170 (1963). However, although this authority states that a person may be justified in assaulting another person to regain property and may even enter the premises of another to do so, the force employed must not exceed that reasonably necessary for the accomplishment of such purpose.

Appellant also cites Restatement (Second) of Torts § 100–107 (1965), which recites substantially the same proposition of law. The restatement does say that the acts to retrieve property are not privileged unless the actor first requests the other to give up possession.

The trial judge, by his instructions, clearly gave appellant the opportunity to present his theory of defense to the jury for their consideration. However, the evidence in this case justifies the jury in refusing to accept appellant's theory of defense. There is no evidence in this case that appellant made any prior contact with Harding in an attempt to retrieve the $100 he mistakenly believed Harding to possess. And although appellant might have been excused had he approached the Hansons in a reasonable manner on his theory of mistake, one can hardly accept as reasonable his entry into the Hanson home by force,

his battery of Mrs. Hanson's son, his tearing of the telephone from the wall, and his ordering the Hansons to remain in the house, all of this while brandishing a knife.

When appellant apparently discovered his mistake in entering the wrong home, he entered Harding's home by kicking in the door and immediately threatened Fike with a knife. Then he dragged Meadows from the bathroom, held a knife to her throat, and forced her to give him money from her purse. Before police arrived, he swung at Fike with the knife and narrowly missed him. The jury was justified in finding that appellant's conduct in entering either home was far beyond conduct permitted in asserting self-help to recover goods or money.

Insofar as his claim of mistake is concerned, although mistake may negate culpability, such mistake must be honest and reasonable. *See Stoner v. State* (1982), Ind., 442 N.E.2d 983.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.